IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANTHONY HICKS,                          §
                                        §
                    Plaintiff,          §
                                        §   Civil Action No. 3:18-CV-0586-D
VS.                                     §
                                        §
R.H. LENDING, INC., d/b/a Residential   §
Home Lending, et al.,                   §
                                        §
                    Defendants.         §

MEMORANDUM OPINION
AND ORDER

In this action challenging an attempted foreclosure, defendants Ocwen Loan Servicing, LLC ("Ocwen") and Wells Fargo Bank, National Association, As Trustee For Option One Mortgage Loan Trust 2007-4, Asset-Backed Certificates, Series 2007-4 ("Wells Fargo") (collectively, "the Ocwen Defendants"), removed the case to this court based on diversity jurisdiction, contending that defendant R.H. Lending, Inc. d/b/a Residential Home Lending ("R.H. Lending"), whom they assume is a Texas citizen, was improperly joined. Plaintiff Anthony Hicks ("Hicks") did not move to remand. Several months after the case was removed, the Ocwen Defendants moved for summary judgment, but the court ordered the parties to brief the issue of improper joinder before it would consider the motion. The parties' jurisdictional briefing is now complete. For the reasons that follow, the court *sua sponte* dismisses defendant R.H. Lending on the ground that it was improperly joined, and grants in part and denies in part the Ocwen Defendants' motion for summary judgment.

I

In January 2007 plaintiff Hicks took out a mortgage loan from R.H. Lending in the amount of $143,920.[1]  The loan was secured by a deed of trust against Hicks's property located on Rawlins Drive in Lancaster, Texas.  According to the Ocwen Defendants' evidence, R.H. Lending assigned the note and deed of trust to Option One Mortgage Corporation ("Option One") that same month.  The Ocwen Defendants' evidence further shows that in 2011 Sand Canyon Corporation—formerly known as Option One—conveyed the same note and deed of trust to Wells Fargo.  Both assignments appear to have been duly recorded in the official Dallas County land records.

Hicks has since defaulted on the loan.  Ocwen—Hicks's current loan servicer—sent a notice of default to Hicks on October 5, 2017, informing him that the debt had been accelerated and the full amount was due no later than November 11, 2017.  The Ocwen Defendants' foreclosure counsel sent a notice of acceleration of maturity—which included the scheduled date of the foreclosure sale, March 6, 2018—to Hicks on January 31, 2018. On February 9, 2018 the Ocwen Defendants' foreclosure counsel sent a notice of substitute trustee sale to Hicks, again informing him of the March 6, 2018 foreclosure sale.

On March 5, 2018—the day before the scheduled foreclosure sale—Hicks filed the instant lawsuit in Texas county court.  His original petition and application for temporary

---

[1]In deciding the Ocwen Defendants' motion for summary judgment, the court views the evidence in the light most favorable to Hicks as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

restraining order allege that the Dallas County land records do not reflect any assignment of his mortgage from Option One to Wells Fargo, that his mortgage note bears no endorsement or allonge, that the Ocwen Defendants did not send him the pre-foreclosure notices required by Texas law, that the Ocwen Defendants failed to credit him for payments he made through October 2017, and that the Ocwen Defendants failed to respond to a request for a loan modification. Hicks asserts that the Ocwen Defendants violated the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. §§ 392.001-.404 (West 2016); that they failed to comply with Tex. Prop. Code Ann. § 51.002 (West 2014); and that they breached the contractual terms of the note and deed of trust. Hicks also alleges that, by assigning his mortgage to Option One, R.H. Lending breached its fiduciary duty to him because it knew about Option One's "pattern and practice of . . . disregard of applicable law in the servicing of mortgage loans." Pet. ¶ 8. Hicks seeks injunctive and declaratory relief, compensatory and exemplary damages, and attorney's fees and costs.

The Ocwen Defendants removed this case to this court based on diversity of citizenship, asserting that the one apparently non-diverse defendant—R.H. Lending—was improperly joined. The Ocwen Defendants now move for summary judgment on all claims. Hicks opposes the motion. At the court's request, the parties have also briefed the question whether the court has subject matter jurisdiction.

## II

Wells Fargo and Ocwen contend that R.H. Lending is improperly joined, and that the court therefore may exercise diversity jurisdiction over this case. The court agrees.

### A

For a case to be removed based on diversity jurisdiction, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). "The jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (citations omitted). Moreover, under 28 U.S.C. § 1441(b), a case cannot be removed based on diversity jurisdiction if any properly joined defendant is a citizen of the state in which the action is brought (here, Texas).

The doctrine of improper joinder is a narrow exception to the rule of complete diversity, and it "entitle[s] a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc); *see also Meritt Buffalo Events Ctr. LLC v. Cent. Mut. Ins. Co.*, 2016 WL 931217, at *2 (N.D. Tex. Mar. 11, 2016) (Fitzwater, J.). The doctrine allows federal courts to defend against attempts to manipulate their jurisdiction, such as by joining nondiverse parties solely to deprive federal courts of diversity jurisdiction. *See Smallwood*, 385 F.3d at 576. Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns." *Gasch v. Hartford*

*Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995)). Therefore, the removal statute is strictly construed, with "any doubt about the propriety of removal [being] resolved in favor of remand." *Id.* at 281-82. In determining whether a party was improperly joined, the court "resolve[s] all contested factual issues and ambiguities of state law in favor of the plaintiff." *Id.* at 281. The party seeking removal bears a heavy burden to prove improper joinder. *Smallwood*, 385 F.3d at 574.

Improper joinder is established by showing that there was either actual fraud in the pleading of jurisdictional facts or that the plaintiff is unable to establish a cause of action against the nondiverse defendant in state court. *Parsons v. Baylor Health Care Sys.*, 2012 WL 5844188, at *2 (N.D. Tex. Nov. 19, 2012) (Fitzwater, C.J.) (citing *Smallwood*, 385 F.3d at 573). Under the second alternative—the one at issue in this case—the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573; *see also Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (explaining that terms "no possibility" of recovery and "reasonable basis" for recovery have essentially identical meaning, and holding that pleadings must show more than "any mere theoretical possibility of recovery"). To assess "whether a plaintiff has a reasonable basis of recovery under state law,"

> [t]he court may conduct a [Fed. R. Civ. P.] 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (footnotes omitted).

The analysis does not end with the conclusion that there is no possibility of recovery against the non-diverse defendant. "When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone," the removing party has failed to show improper joinder. *Id.* at 575. This principle is sometimes called the "common defense rule." *See* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3723.1, at 362-63 (4th ed. 2018). Under the common defense rule, the court must remand the case "[i]f, but *only* if, the showing which forecloses [plaintiff's] claims against the non-diverse defendants *necessarily* and *equally compels* foreclosure of all their claims against all the diverse defendants." *Boone v. Citigroup, Inc.*, 416 F.3d 382, 391 (5th Cir. 2005).

When deciding whether a defendant has been improperly joined, a federal district court must apply the federal pleading standard. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp. Ltd.*, 818 F.3d 193, 207-08 (5th Cir. 2016) (on rehearing). This standard

requires the plaintiff to plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (*quoting Twombly*, 550 U.S. at 555).

## B

Applying the controlling standard, the Ocwen Defendants have met their heavy burden of proving that R.H. Lending has been improperly joined. The only claim that Hicks brings against R.H. Lending is for breach of fiduciary duty. Hicks's petition appears, however, to contradict itself as to the nature of the relationship between Hicks and R.H.

Lending. At some points, the petition seems to allege that R.H. Lending was itself a mortgagee. *See, e.g.,* Pet. ¶ 4 ("Plaintiff executed a Note . . . and a Deed of Trust . . . for the benefit of RH [Lending] covering the Property."). At others, the petition suggests that R.H. Lending was a mortgage broker, whose task was to secure financing on Hicks's behalf. *See, e.g., id.* ¶ 8 ("As an entity steering the financing of its newly constructed homes to a mortgage banker, [R.H. Lending] had a fiduciary duty to bring a mortgage banker in to finance the transaction . . . on the best possible price and terms[.]"). Hicks cites authority suggesting that a mortgage broker owes a fiduciary duty to its client. *See Kelly v. Gaines*, 181 S.W.3d 394, 413-15 (Tex. App. 2005), *rev'd on other grounds*, 235 S.W.3d 179 (Tex. 2007). But this authority is inapposite.

A limited, summary assessment of the evidence submitted by the parties in relation to the Ocwen Defendants' motion for summary judgment reveals that R.H. Lending was a mortgage *lender*, not a mortgage *broker*. *See Smallwood*, 385 F.3d at 573-74 (recognizing district court's discretion to pierce the pleadings where plaintiff has omitted or misstated discrete facts that would determine propriety of joinder). The Ocwen Defendants have submitted a note and deed of trust executed by Hicks in favor of R.H. Lending, as *lender and mortgagee*. The note and deed of trust are admissible evidence that the court may consider. *See infra* § IV. This evidence makes it clear that R.H. Lending was not Hicks's mortgage broker, but rather his lender.

Because R.H. Lending was Hicks's mortgage lender, Hicks's breach of fiduciary duty claim fails as a matter of law. In Texas, there generally is no fiduciary relationship between

- 8 -

a mortgagor and mortgagee. *See Wakefield v. Bank of Am., N.A.*, 2018 WL 456721, at *5 (Tex. App. 2018, no pet.) (citing *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 303 (Tex. App. 1988, writ denied)). Nor is there such a relationship between a loan servicer and its client. *Williams v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 443986, at *3 (N.D. Tex. Feb. 13, 2012) (Robinson, J.). Texas courts have found fiduciary relationships between borrowers and lenders before, but only based on "extraneous facts and conduct, such as excessive lender control or influence in the borrower's business activities." *Wakefield*, 2018 WL 456721, at *5 (quoting *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App. 1998, pet. denied)). Hicks's petition contains nothing that plausibly alleges that there are special circumstances that gave rise to such a relationship. The Ocwen Defendants have therefore met their heavy burden of proving that Hicks cannot recover from R.H. Lending for breach of fiduciary duty.

This showing is dispositive of Hicks's claim against R.H. Lending, but not of his claims against the Ocwen Defendants. R.H. Lending is the only party named in the breach of fiduciary duty portion of the petition. And R.H. Lending is not subject to any other claims: all of Hicks's other claims either explicitly name Wells Fargo and Ocwen as defendants, or arise from events that took place long after R.H. Lending assigned the loan. The common defense rule therefore does not apply. *See Smallwood*, 385 F.3d at 575. The court concludes that R.H. Lending is improperly joined.

Because R.H. Lending is improperly joined, it is within the court's power to dismiss it from the case. *See Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc)

("[I]f the plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant."); *see also, e.g., Allen v. Lowe's Home Ctrs., Inc.*, 2012 WL 1190255, at *1 (W.D. La. Mar. 1, 2012) (recommending, after *sua sponte* ordering jurisdictional briefing, that non-diverse defendant be dismissed as improperly joined), *rec. adopted*, 2012 WL 1185025, at *1 (W.D. La. Apr. 9, 2012). The court therefore dismisses Hicks's sole claim against R.H. Lending without prejudice.[2]

## III

The court now turns to the Ocwen Defendants' motion for summary judgment.

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen*

_____

[2]The dismissal must be without prejudice. *Alviar v. Lillard*, 854 F.3d 286, 291 (5th Cir. 2017).

*Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007 ) (Fitzwater, J.).

Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d

at 1076.

IV

The Ocwen Defendants submit the affidavit of Crystal Kearse ("Kearse"), a custodian

of records for Ocwen. Hicks offers an argument that appears to go to the admissibility of the

evidence appended to Kearse's affidavit, although it is not framed as an objection:

> The Affidavit of Crystal Kearse claims personal knowledge
> obtained by examination of records, not from long personal
> familiarity with the Loan . . . . Hence, the statement in the third
> paragraph that entries in the loan records were made at the time
> of the events is rendered meaningless, since Ms. Kearse cannot
> possibly testify as to each step of the chain of events of
> purported indorsement of the Note or assignment of the Loan,
> since her knowledge is only, at best, of practices of [Ocwen]
> itself.

P. Resp. 2 (citations omitted). This argument appears to challenge whether the exhibits

appended to Kearse's affidavit fall within the business records exception to the rule against

hearsay. The material that a party cites in support of summary judgment must be, in some

form, admissible in evidence. *See* Rule 56(c)(2). Hearsay is inadmissible unless an

exception applies. *See* Fed. R. Evid. 802. In order to take advantage of the business records

exception to the hearsay rule, the proponent of an exhibit must show, *inter alia*, that the

exhibit was made at or near the time of the event that it records. Fed. R. Evid. 803(6)(A).

Moreover, an affidavit is only competent summary judgment evidence to the extent it is

based on personal knowledge. *See Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559,

1561 (5th Cir. 1992) (per curiam). Hicks's argument seems to be that Kearse cannot establish that the note and loan records fall within the business records exception because she has no *personal* knowledge of whether the documents satisfy Rule 803(6)(A).

The court understands Hicks to be advancing two different grounds for why Kearse lacks personal knowledge. First, Hicks contends that Kearse obtained her knowledge about when the relevant records were created from an "examination of records, not from long personal familiarity with the Loan," and therefore did not truly have personal knowledge of this fact. P. Resp. 2. "But '[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy.'" *United States v. Armstrong*, 619 F.3d 380, 384-85 (5th Cir. 2010) (alteration in original) (quoting *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008)). For the purpose of the business records exception, a "qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *Id.* at 385 (quoting *Brown*, 553 F.3d at 792). Whether a witness is qualified can be inferred from her position within an organization. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005). Kearse avers that she is a "custodian of records for Ocwen" and is "responsible for ensuring that Ocwen maintains accurate and complete records of its regularly conducted activities." D. App. at App2. This is sufficient.

Second, Hicks's argument can be read as an objection to the Ocwen Defendants' exhibits to the extent they were created before the Ocwen Defendants took over servicing and ownership of the loan. The idea would be that a declarant like Kearse—who is only familiar

with *Ocwen's* business practices—has no knowledge of whether any pre-Ocwen records meet the business records exception. This formulation of the argument also fails. "[T]here is no requirement that [business] records be created by the business having custody of them." *Cline v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 4041791, at *3 (N.D. Tex. July 2, 2015) (Fitzwater, J.) (quoting *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990)).

> Rule 803(6) allows business records to be admitted if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations. Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity.

*Id.* (quoting *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999)). It is sufficient that the records in question are now part of Ocwen's business records. Hicks's objections therefore lack merit.

## V

Hicks alleges that the Ocwen Defendants violated Tex. Prop. Code Ann. § 51.002(b) and (d) and breached the contractual terms of the note and deed of trust. The Ocwen Defendants are entitled to summary judgment on these claims because Hicks has failed to show that he complied with his obligations under the note and deed of trust, as required to prove a breach of contract claim, and because the Texas Property Code confers no private right of action.

A

The Ocwen Defendants have produced evidence in the form of Kearse's affidavit indicating that Hicks has not performed his contractual obligations by remaining current on his mortgage payments until the alleged breach. Hicks has failed to identify evidence to the contrary. Hicks therefore lacks evidence for an essential element of his breach of contract claim. *See Metcalf v. Deutsche Bank Nat'l Tr. Co.*, 2012 WL 2399369, at *10 (N.D. Tex. June 26, 2012) (Fitzwater, C.J.) (citing *Obuekwe v. Bank of Am., N.A.*, 2012 WL 1388017, at *5 (N.D. Tex. Apr. 19, 2012) (Means, J.) (holding that plaintiff "cannot state a claim for breach of the deed of trust because [plaintiff] admits that she defaulted on the loan," and therefore cannot demonstrate that she performed her duties under the contract); *Owens v. Bank of Am., NA*, 2012 WL 912721, at *4 (S.D. Tex. Mar. 16, 2012) (dismissing breach of contract claim because "plaintiffs have undisputedly not performed their contractual obligations because they have not stayed current on their mortgage payments")). This is alone a sufficient basis on which to grant summary judgment on the claim. *See Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 544-45 (5th Cir. 2003) (requiring proof of all four elements of breach of contract claim).

B

Hicks alleges that the Ocwen Defendants violated Tex. Prop. Code Ann. § 51.002(b) and (d) either by failing to provide the statutorily-required foreclosure notices, or by

wrongfully providing such notices when they lacked capacity to foreclose.[3]  This claim, asserted directly under the Property Code, fails as a matter of law because "[§] 51.002 . . . does not provide a private right of action."  *Solis v. U.S. Bank, N.A.*, 2017 WL 4479957, at *2 (S.D. Tex. June 23, 2017) (citing *Tex. Ashton v. BAC Home Loans Servicing, L.P.*, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013)), *aff'd on other grounds*, 726 Fed. Appx. 221, 222 (5th Cir. 2018) (per curiam); *see also Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 830 n.2 (5th Cir. 2015) ("Although the Texas Supreme Court has not decided this issue, the federal district courts that have addressed it seem to conclude that Section 51.002(d) does not intend an independent private cause of action.").[4]  The court therefore grants the Ocwen Defendants' motion for summary judgment on this claim.

VI

The court now turns to Hicks's claims under the TDCPA.

A

Several of Hicks's TDCPA claims can be disposed of at the summary judgment stage,

---

[3]Hicks clarifies in his response brief that he "does not assert a private right of action under Texas Property Code Chapter 51," but instead alleges that the Ocwen Defendants' violations of the Property Code underlie his TDCPA and breach of contract claims.  P. Resp. Br. 5.  For the sake of thoroughness, however, the court will address Hicks's Property Code allegations as if they were a separate cause of action.

[4]Courts sometimes construe claims under the Texas Property Code as common-law wrongful foreclosure claims.  *See, e.g., Solis*, 2017 WL 4479957, at *3.  But where, as here, no foreclosure actually occurred, the plaintiff cannot recover damages for an "attempted wrongful foreclosure."  *See De La Garza v. Bank of N.Y. Mellon*, 2018 WL 5725250, at *4 & n.8 (Tex. App. Nov. 1, 2018, no pet.) (collecting cases).

either on legal or evidentiary grounds.

First, Hicks alleges that the Ocwen Defendants violated the TDCPA by failing to credit payments that Hicks made toward the loan through October 2017. *See* Pet. ¶¶ 5(b)(1), 5(c)(1). According to Kearse, however, Hicks has been in default since September 2012. The Ocwen Defendants also point to the absence of evidence that they failed to credit any payments. Hicks fails to identify or submit any evidence creating a genuine dispute as to whether he continued to pay his mortgage through October 2017. Therefore, the Ocwen Defendants are entitled to summary judgment on these claims.

Hicks also alleges that the Ocwen Defendants violated Tex. Fin. Code Ann. § 392.303(a)(2) by "threaten[ing] to conduct one or more substitute trustee's sales of the property." Pet. ¶ 5(b)(2). Section 392.303(a)(2) forbids "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." The court has not found, and Hicks has not presented, any authority for the proposition that a foreclosure qualifies as "interest or a charge, fee, or expense incidental to" a mortgage loan. The Ocwen Defendants are therefore entitled to summary judgment on Hicks's TDCPA claim in this respect.

Hicks vaguely alleges that "Defendants demanded Plaintiff pay one or more sums above the amounts provided by the Note and Deed of Trust," in violation of the same provisions of the TDCPA. Pet. ¶ 5(c)(2). The Ocwen Defendants point to the lack of any evidence for this claim—and Hicks does not identify any evidence suggesting that the Ocwen

Defendants demanded any sums in excess of what was due under the note and deed of trust. The Ocwen Defendants are therefore entitled to summary judgment in this respect as well.

Hicks alleges that the Ocwen Defendants violated provisions of the TDCPA—specifically, Tex. Fin. Code Ann. § 392.304(a)(8) and (19)—by failing to respond to a request for a loan modification. *See* Pet. ¶ 5(c)(3). This claim fails as a matter of law. "Communications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its *modification* and thus they do not state a claim under Section 392.304(a)(19)." *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015). As to the § 392.304(a)(8) claim, the Ocwen Defendants point to the absence of evidence of an essential element of this claim: that the Ocwen Defendants made *affirmative statements* that were false or misleading. *See id.* Thus Hicks has failed to designate any evidence creating a genuine dispute of material fact on the matter. The Ocwen Defendants are therefore entitled to summary judgment on this claim.

## B

### 1

Hicks's remaining TDCPA claims are based on three interrelated premises. Hicks alleges that, due to defects in the chain of assignments, the Ocwen Defendants lack authority to foreclose, and therefore acted wrongfully when they sent him notice of their intent to foreclose on his property. Hicks also asserts that the Ocwen Defendants lacked capacity to send him the pre-foreclosure notices required by Tex. Prop. Code Ann. § 51.002 because of these same defects in the chain of title. Finally, Hicks alleges that the Ocwen Defendants did

not *actually* send him the required notices.  According to Hicks, these actions are violations of Tex. Fin. Code Ann. § 392.301(a)(8).  *See* Pet. ¶ 5(a).

2

The Ocwen Defendants are entitled to summary judgment on these TDCPA claims to the extent they are premised on the allegation that the Ocwen Defendants never sent the required pre-foreclosure notices.

Sections 51.002(b) and (d) of the Texas Property Code require that certain forms of notice be given to borrowers before a foreclosure sale.  Under § 51.002(d), the loan servicer must send the borrower "written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)."  Then, at least 21 days before the date of the sale, the borrower must be served with written notice of the sale itself—also by certified mail.  Tex. Prop. Code Ann. § 51.002(b)(3).

Here, the Ocwen Defendants have submitted evidence showing that they provided the requisite notice to Hicks, thereby negating an essential element of Hicks's claims.  The Ocwen Defendants sent Hicks a notice of default by certified mail on October 5, 2017 that gave Hicks until November 11, 2017 to cure.  On January 31, 2018 foreclosure counsel for the Ocwen Defendants sent Hicks a notice of acceleration of maturity—a notice that mentioned the March 6, 2018 date of the scheduled foreclosure sale.[5]  Finally, on February

---

[5]Hicks contends that this notice "deceptively" refers to an enclosed notice of trustee's sale.  P. Resp. 2.  He suggests that there is a discrepancy between the notice of acceleration

9, 2018 the Ocwen Defendants' foreclosure counsel sent a notice of trustee's sale to Hicks

by certified mail, again informing him of the scheduled foreclosure sale. These notices are

sufficient to satisfy § 51.002. Hicks offers no evidence to the contrary. Summary judgment

in favor of the Ocwen Defendants is therefore warranted insofar as Hicks's claims rely on

the allegation that Hicks never received the statutorily-required notices from the Ocwen

Defendants.

3

The court cannot grant summary judgment, however, to the extent that Hicks's claims

are premised on the allegation that the Ocwen Defendants lacked capacity to foreclose

because there is a genuine issue of material fact that precludes summary judgment.

The petition alleges that there is no evidence in the Dallas County public records of

any assignment of Hicks's mortgage from Option One to Wells Fargo. Attached to Kearse's

affidavit are, *inter alia*, two exhibits that appear to be assignments of Hicks's note and deed

of trust: one from R.H. Lending to Option One, and one from Sand Canyon Corporation

(formerly known as Option One) to Wells Fargo. Both documents are recorded. These

---

of maturity (which states that the notice of trustee's sale is enclosed) and an affidavit of mailing executed by the Ocwen Defendants' foreclosure counsel (which states that the notice of trustee's sale was mailed several days later, on February 9, 2018). But even if Hicks is correct that the January 31 notice did not include a separate notice of trustee's sale, the Ocwen Defendants are still entitled to summary judgment: the February 9 mailing alone sufficed to provide the notice required by § 51.002(b)(3), because it was sent by certified mail at least 21 days before the foreclosure sale. *See Onwuteaka v. Cohen*, 846 S.W.2d 889, 893 (Tex. App. 1993, writ denied) (explaining that 21-day notice period is calculated from date of mailing to date of foreclosure sale, excluding the first day and including the final day).

documents show the complete chain of assignments from R.H. Lending to Wells Fargo. The Ocwen Defendants have therefore met their initial burden of pointing to the absence of evidence of an essential element of Hicks's claims (in fact, they have produced evidence that *negates* an essential element of Hicks's claims).

But Hicks has identified further evidence that creates a genuine dispute of material fact. He points to proof of a rogue assignment document in the Ocwen Defendants' evidence. This document purports to be an assignment of Hicks's note and deed of trust, but it does not name an assignee. It was executed by Option One in February 2007—days after R.H. Lending assigned the mortgage to Option One, and several years before Option One assigned the mortgage to Wells Fargo. Interpreting the evidence in the light most favorable to Hicks, this document suggests that Option One may have assigned his loan to an unknown third party *before* it assigned the loan to Wells Fargo, thus breaking the chain of assignments. The existence of this document creates a genuine factual dispute regarding the Ocwen Defendants' capacity to foreclose.

The factual dispute regarding the Ocwen Defendants' capacity to foreclose is material because threatening or attempting to foreclose, without authority to do so, is a violation of the TDCPA. Section 392.301(a)(8) of the Texas Finance Code prohibits debt collectors from "threatening to take an action prohibited by law." If the Ocwen Defendants lacked authority to foreclose on Hicks's residence at the time they sent him the relevant foreclosure notices, they violated § 392.301(a)(8). *See McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 477-78 (5th Cir. 2015); *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 732-

33 (N.D. Tex. 2011) (Fitzwater, C.J.).  The court is therefore unable to grant summary judgment to the Ocwen Defendants on this claim.[6]

4

The Ocwen Defendants maintain that, because Hicks failed to plead or submit evidence of actual damages, his TDCPA claims fail as a matter of law.  Hicks seeks both actual damages and injunctive relief for the Ocwen Defendants' alleged TDCPA violations.

With respect to his request for actual damages, summary judgment is warranted because Hicks fails to identify any evidence indicating that he suffered such damages, or connecting those damages to the Ocwen Defendants' alleged TDCPA violations.  *See Johnson v. Ocwen Loan Servicing LLC*, 2018 WL 655361, at *4 (N.D. Tex. Jan. 10, 2018) (Horan, J.) ("Texas courts have held that in order to maintain an action for *actual damages* under the [TDCPA], a plaintiff must plead and prove actual damages." (emphasis added)), *rec. adopted*, 2018 WL 638256, at *1 (N.D. Tex. Jan. 31, 2018) (Lynn, C.J.), *aff'd*, 916 F.3d 505, 509-10 (5th Cir. 2019).  The Ocwen Defendants are entitled to summary judgment as to Hicks's claim for actual damages.

_____

[6]In addition to his argument about the rogue assignment document, Hicks contends that Kearse's affidavit does not indicate whether she examined the *original* note and deed of trust, or whether she instead examined mere electronic copies of the original documents. This argument seems to derive from the so-called "show-me-the-note" theory: the notion that if a bank or mortgage servicer does not have the borrower's original, wet-ink signature note, it cannot foreclose. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013).  But the Fifth Circuit has unequivocally rejected this theory. *See id.* at 254.  Thus even if there is a genuine dispute as to whether Kearse examined the original, wet-ink loan documents, the dispute is immaterial because it does not affect the Ocwen Defendants' authority to foreclose.

It is not clear, however, that Hicks must provide evidence of actual damages in order to maintain an action for *injunctive* relief. Federal courts appear to be divided on the matter. *Compare Naranjo v. Universal Sur. of Am.*, 679 F.Supp.2d 787, 801 (S.D. Tex. 2010) ("Texas courts have stated that a plaintiff who cannot prove actual damages cannot 'successfully maintain an action under the Texas Debt Collection Act.'" (brackets omitted) (quoting *Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 30-31 (Tex. App. 2000, pet. denied))), *with McCartney v. CitiFinancial Auto Credit, Inc.*, 2010 WL 5834802, at *6 (E.D. Tex. Dec. 14, 2010) ("[T]he Court notes that there is also authority stating that a suit under the [TDCPA] may be maintained for inju[n]ctive relief, without alleging or proving actual damages." (citing *Marauder Corp. v. Beall*, 301 S.W.3d 817, 823 (Tex. App. 2009, reh'g denied))), *rec. adopted*, 2011 WL 675386, at *1 (E.D. Tex. Feb. 16, 2011), *and In re Eastman*, 419 B.R. 711, 736 & n.18 (Bankr. W.D. Tex. 2009) (awarding attorney's fees to plaintiff who succeeded in obtaining injunction under TDCPA without proof of actual damages). "The Texas Supreme Court has not yet spoken on the issue." *Naranjo*, 679 F.Supp.2d at 801. Thus the court must make an "*Erie* guess"[7] about how the Supreme Court of Texas would decide the matter, looking to decisions of the Texas courts of appeals for guidance. *See McCaig*, 788 F.3d at 472-73.

The court concludes that Hicks can maintain his claim for injunctive relief under the TDCPA because that claim does not require proof of actual damages. The court bases this

---

[7]*See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

conclusion on the plain text of the statute, which is of primary importance to Texas courts. *See, e.g., City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) ("In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute."). Under Tex. Fin. Code Ann. § 392.403(a), "[a] person may sue for: (1) injunctive relief to prevent or restrain a violation of this chapter; and (2) actual damages sustained as a result of a violation of this chapter." Where Texas courts have required plaintiffs to plead or prove actual damages in order to maintain a claim under the TDCPA, they have usually based that requirement on the language of § 392.403(a)(2). *See, e.g., Kyle v. Strasburger*, 2019 WL 1487357, at *13 (Tex. App. Apr. 4, 2019, no pet. h.); *De La Garza v. Bank of N.Y. Mellon*, 2018 WL 5725250, at *5 (Tex. App. Nov. 1, 2018, no pet.); *Farkas v. Wells Fargo Bank, N.A.*, 2016 WL 7187476, at *10 (Tex. App. Dec. 8, 2016, no pet.);[8] *Hingst v. Providian Nat'l Bank*, 2003 WL 21467093, at *1 n.6 (Tex. App. June 26, 2003, no pet.); *Elston v. Resolution Servs., Inc.*, 950 S.W.2d 180, 185 (Tex. App. 1997, no pet.) (referring to earlier version of same statute). But the actual damages requirement of § 392.403(a)(2) is separate from, and does not appear to apply to, the language of § 392.403(a)(1) authorizing persons to seek injunctive relief. *See McCartney*, 2010 WL 5834802, at *6; *Farkas*, 2016 WL 7187476, at *10; *Marauder Corp.*, 301 S.W.3d at 823; *see*

---

[8]In *Farkas* the court granted summary judgment in favor of the defendant on the plaintiff's TDCPA *damages* claim because the plaintiff failed to plead actual damages. *See Farkas*, 2016 WL 7187476, at *10. The court granted summary judgment on the plaintiff's TDCPA *injunctive relief* claim on a different ground: that the plaintiff failed to prove he faced imminent harm. *See id.*

*also Allen v. Dovenmuehle Mortg., Inc.*, 2015 WL 3952274, at *1 (N.D. Tex. June 29, 2015)

(Lindsay, J.) (acknowledging that "a plaintiff can maintain a suit for injunctive relief, which

can give rise to an award of statutory damages under the TDCPA," but dismissing plaintiff's

TDCPA claim because plaintiff did not seek injunctive relief and did not plead actual

damages), *appeal docketed*, No. 15-10744 (5th Cir. Aug. 3, 2015); *Turner v.*

*AmericaHomeKey Inc.*, 2011 WL 3606688, at *4 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.)

(dismissing TDCPA claim because plaintiff failed to allege *either* actual damages *or*

prospective violations of law that would merit injunctive relief).  Insofar as Hicks proceeds

under § 392.403(a)(1), the court will not dismiss his claim for failure to produce evidence

of actual damages.[9]

VII

As a consequence of the foregoing rulings, the only surviving claim against the

Ocwen Defendants is for an alleged violation of § 392.301(a)(8) of the Texas Finance Code

based on threatening to foreclose on Hicks's residence without authority.  *See* Pet. ¶ 5(a).

Because Hicks has failed to designate evidence showing that he suffered actual damages

resulting from this violation, as required by § 392.403(a)(2), Hicks can only proceed under

§ 392.403(a)(1).  The court grants summary judgment to the Ocwen Defendants as to all

---

[9]The Ocwen Defendants do not argue that Hicks must show "prospective violations of the [TDCPA], or the need to restrain defendants from current violations," in order to obtain injunctive relief.  *Turner*, 2011 WL 3606688, at *4; *see also Farkas*, 2016 WL 7187476, at *10.  Because the court cannot grant a motion for summary judgment on grounds not raised by a party unless it first gives notice and a reasonable time to respond, *see* Rule 56(f), the court will not consider this potential ground for summary judgment.

other claims against them.  The court also dismisses the sole claim against defendant R.H. Lending on the ground that it was improperly joined.

A genuine dispute of material fact exists as to whether Option One assigned Hicks's mortgage to a third party before purportedly assigning it to Wells Fargo.  A trial is necessary to resolve this dispute and, in turn, to determine whether Hicks may be entitled to relief.

\*　\*　\*

For the reasons stated, the court grants in part and denies in part the Ocwen Defendants' motion for summary judgment, and *sua sponte* dismisses defendant R.H. Lending without prejudice as improperly joined.

**SO ORDERED**.

April 10, 2019.

<br>

SIDNEY A. FITZWATER
SENIOR JUDGE